UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK C. LOUDE,

        Petitioner,

v.                                          CASE NO. 06-12898
                                            HONORABLE NANCY G. EDMUNDS

JOHN PRELESNIK,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Mark C. Loude has filed a petition for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state conviction for armed robbery. Petitioner alleges that his right of confrontation was violated by limitations placed on his cross-examination of the complaining witness. The Court has reviewed the record and concluded that Petitioner's Sixth Amendment right to confront witnesses was not violated. Accordingly, the habeas petition will be denied.

### I. Background

Petitioner was charged in Wayne County, Michigan with one count of armed robbery. *See* Mich. Comp. Laws § 750.529. The charge arose from allegations that Petitioner robbed Sekou Keita at Seven Mile Road and Livernois Avenue in Detroit, Michigan. Mr. Keita testified at Petitioner's jury trial that Petitioner and a few other men confronted him about 4:00 p.m. on October 4, 2003, and that Petitioner had been armed with a small gun. The men took Mr. Keita's jacket, cell phone, necklace, and wallet, which contained money, a credit card, and other items.

The defense theory was that Petitioner was at home about three miles away when the robbery occurred and that Mr. Keita had misidentified him as the robber. The jurors apparently believed Mr. Keita for, on April 15, 2004, they found Petitioner guilty, as charged, of armed robbery.

At the sentencing on May 14, 2004, Petitioner accepted responsibility for his actions. The trial court then sentenced Petitioner to imprisonment for a minimum term of six years, nine months and to a maximum term of twenty years. The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished *per curiam* opinion, *see People v. Loude*, No. 255724 (Mich. Ct. App. Oct. 18, 2005), and on April 13, 2006, the Michigan Supreme Court denied leave to appeal. *See People v. Loude*, 474 Mich. 1111; 711 N.W.2d 750 (2006).[1]

Petitioner filed his habeas corpus petition on June 29, 2006. The sole ground for relief reads:

> Petitioner was denied his VI Amendment right to confrontation where his trial judge limited defense counsel's cross-examination of the prosecution's only witness, complainant Sekou Keita, by forbidding defense counsel from asking any questions regarding complainant's allegedly stolen work authorization papers and his deportation status.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] Justice Marilyn Kelly voted to grant leave to appeal.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. Section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III. Discussion

#### A. State Law Issues

Petitioner alleges that the trial court failed to make a proper analysis of the issue under

3

state law and improperly relied on Michigan Rules of Evidence 401 - 403 instead of Rules 608 - 609. The alleged violations of state law are inconsequential because "federal habeas corpus relief does not lie for errors of state law . . . ." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)).

### B. The Constitutional Issue

Petitioner also claims that the trial court deprived him of his constitutional right to confront witnesses by preventing him from cross-examining the complaining witness, who was from Kenya, about his work authorization papers and his immigration status. Petitioner wanted to show that (1) the complainant had been illegally present in the United States for the previous six years, (2) the complainant could not have had valid work authorization papers at the time of the robbery, and (3) the complainant was less likely than the average citizen to provide truthful testimony. Petitioner asserts that the complainant's answers to his questions would have impacted the jury's assessment of the complainant's credibility.

The Michigan Court of Appeals adjudicated Petitioner's constitutional claim on the merits and concluded that Petitioner was raising a collateral issue, which only generally related to the witness's credibility. The state court of appeals also found the alleged error to be harmless.

### 1. Legal Framework

The Confrontation Clause of the Sixth Amendment applies to state court proceedings, *Pointer v. Texas*, 380 U.S. 400, 403 (1965), and "guarantees to a criminal defendant the right 'to

4

be confronted with the witnesses against him.' U.S. Const. amend. VI." *Danner v. Motley*, 448 F.3d 372, 377 (6th Cir. 2006).

> "Indeed, [t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (alteration in the original) (internal quotation marks and citation omitted). That said, the criminal defendant's right to cross-examine witnesses is not limitless:
>
>> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And, as [the Supreme Court has] observed . . . , "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."
>
> *Id*. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). Thus, a state trial court has discretion to limit cross-examination. Moreover, "[w]here it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion." *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989).
>
> Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Id*.

*Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006).

## 2. The Facts

At the close of the first day of trial, the prosecutor stated that the complainant, Sekou Keita, was incarcerated pending an immigration hearing. The prosecutor requested that no mention be made of Mr. Keita's immigration hearing and incarceration. Defense counsel responded that she had acquired this information about half an hour earlier. The trial court asked the attorneys to cooperate with discovery and to raise the issue on the following day.

5

On the next day, the prosecutor reported that Mr. Keita had gone to the Immigration and Naturalization Service (INS) on January 22, 2004, to acquire a work authorization permit because his prior permit was stolen during the robbery. Mr. Keita was taken immediately into custody when an INS employee determined that Keita was not authorized to be in the country. The prosecutor stated that Mr. Keita's immigration status remained unresolved, and it was unclear whether he would be deported or allowed to stay in the United States. Upon hearing this information, the trial court permitted defense counsel to contact the INS. After contacting an INS agent, defense counsel informed the trial court that Mr. Keita could not have had valid work authorization papers at the time of the robbery because he had not been legally in the country since 1996.

The trial court initially ruled that defense counsel could ask Mr. Keita whether he was eligible to work. However, when defense counsel subsequently asked Mr. Keita when his work authorization papers expired, the prosecutor objected on relevancy grounds, and the trial court sustained the objection. The trial court also ruled that defense counsel could not make any reference to deportation or Mr. Keita's incarceration.

### 3. Analysis

This is not a case where defense counsel was prevented from cross-examining the only prosecution witness. Counsel thoroughly cross-examined Mr. Keita about his delay in reporting the crime, his prior descriptions of the perpetrators, his pretrial identification of Petitioner, his failure to view a lineup, the perpetrator's gun, and inconsistencies between his trial testimony and his statement to the police. Counsel was even permitted to ask Mr. Keita whether he had informed the police that his work authorization papers were taken and whether the papers were

6

valid.

Defense counsel was prevented from asking Mr. Keita about the expiration date of his work authorization papers, his incarceration, and his immigration status. However, these subjects were not relevant to the only real issue in dispute, which was whether Mr. Keita had correctly identified Petitioner as the armed robber. It would not have made a difference in the verdict if Petitioner could have shown that Mr. Keita's work authorization papers were not stolen, because Mr. Keita testified that several other items were taken from him.

The jury might have questioned Mr. Keita's general credibility if defense counsel could have shown that Mr. Keita lied about the validity of his work authorization papers and immigration status. However, Mr. Keita testified that the work papers were valid, and it does not appear from the record that he intentionally misled INS authorities. The prosecutor informed the trial court that Mr. Keita's immigration lawyer never filed the necessary paperwork, and it is not plausible that Mr. Keita would have tried to acquire new work authorization papers from INS after the robbery if he knew that he had violated immigration laws and was at risk of being deported.

Questioning Mr. Keita about his immigration status, incarceration, and possible deportation could have confused the jury on what was, at best, "marginally relevant" issues. *Toliver v. Hulick*, 470 F.3d 1204, 1208 (7th Cir. 2006); *United Sates v. Brown*, 347 F.3d 1095, 1099 (9th Cir. 2003). The jury had enough information, despite the limits placed on defense counsel's cross-examination to assess the defense theories of alibi and mistaken identification. Therefore, the state appellate court's ruling that Petitioner's constitutional right of confrontation was not violated did not result in a decision that was contrary to, or an unreasonable application

7

of, Supreme Court precedent.

## C. Harmless Error

Confrontation Clause errors are subject to harmless error analysis. *Van Arsdall*, 475 U.S. at 684. The test on habeas review of constitutional errors is whether the error had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This test applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*, 386 U.S. 18 (1967)]." *Fry v. Pliler*, __ U.S. __, __, 127 S. Ct. 2321, 2328 (2007).

The Michigan Court of Appeals summarized the evidence as follows:

> The victim testified that he saw defendant face-to-face in the light of day while close enough to reach out and touch him. Though defendant was part of a group, he was the sole gunman and for that reason the victim focused on him out of fear, to the point that he urinated during the robbery. The trial court described his testimony, which the jury heard live, as "positive" and "adamant." . . . . The victim identified defendant's photograph a few days after the robbery and described his level of confidence as one hundred percent. He testified that he would not forget defendant's face for a century . . . .
>
> Defendant's impeachment of the testimony only affected some of its particulars and not its general thrust, which was adverse to defendant. Nothing in the record seriously impeached the victim's claim that he had a plain view of defendant, that he was in close proximity to him, and that it was daylight. Instead, defendant's alibi witnesses, who were for the most part his close relations, merely asked the jury to believe them instead . . . .
>
> Furthermore, defendant's alibi testimony was not overwhelming. None of it necessarily demonstrated that he had no opportunity to commit the crime or that it was otherwise physically impossible.

*Loude*, Mich. Ct. App. No. 255724, at 2-3.

In light of the strength of the evidence against Petitioner, additional information

8

concerning the complaining witness's work authorization papers, incarceration, and immigration status likely would not have had a "substantial and injurious effect or influence" on the jury's verdict. Thus, even assuming that the trial court erred in restricting Petitioner's cross-examination of the complainant, the constitutional error was harmless.

## IV. Conclusion

Petitioner was not deprived of his constitutional right to confront witnesses and even if he was deprived of the right, the alleged error was harmless. Therefore, the state court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent, and the Petition for a Writ of Habeas Corpus is DENIED. The Court DECLINES to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: November 7, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 7, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager